JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charles Eskridge appeals his conviction for robbery, arguing the requisite element of force was not proven and that the trial court erred in instructing the jury. He assigns the following errors for our review:
 {¶ 2} "I. Appellant Charles Eskridge's conviction for robbery was based on insufficient evidence and against the manifest weight of the evidence."
 {¶ 3} "II. The court erred in failing to properly define force and in failing to instruct the jury on the Committee Comment regarding force in the robbery statute."
 {¶ 4} Having reviewed the record and pertinent law, we reverse and remand Eskridge's conviction for robbery. The apposite facts follow.
 {¶ 5} Eskridge was indicted by the grand jury on one count of robbery, a second degree felony, and one count of theft, a first degree misdemeanor. The case proceeded to a jury trial. At the trial, the evidence revealed on July 1, 2002 at approximately 8:22 a.m., Eskridge was at Angela's Family Restaurant located at East 79th and St. Clair Avenue, where he ordered a cup of coffee. He was a regular customer at the restaurant. As the cashier opened the register drawer, Eskridge leaned over the counter and took cash from the cash register.
 {¶ 6} Markia Kontos, the cashier, testified that when she opened the register drawer, Eskridge leaned over and grabbed a fifty dollar bill from the drawer, which was rigged to an alarm system. Kontos attempted to shut the cash register drawer, but according to her, Eskridge pushed her and grabbed more money. Kontos screamed loudly, "I just got robbed. I just got robbed." Eskridge than ran out of the door. Kontos repeatedly confirmed that Eskridge "pushed" her in order to reach into the cash register. Kontos then authenticated a videotape of the robbery, which was filmed by a security camera behind the counter. The tape was shown to the jury and still photographs from the video were also shown.[1] The photographs do not show Eskridge pushing the victim, but indicate his hand was in the drawer the entire time.
 {¶ 7} On cross-examination, Kontos admitted the push by Eskridge only moved her back about a "half-inch."
 {¶ 8} The owner of the restaurant, Michael Kontos, testified he saw Eskridge order the coffee and also saw him grab the money out of the drawer, push Kontos' daughter, and grab more money. Kontos knew Eskridge from seeing him around the neighborhood and at the restaurant.
 {¶ 9} Detective Berry testified he took Eskridge's statement after he was arrested. According to Berry, Eskridge admitted to taking the money and blamed his drug habit. Eskridge denied, however, ever touching or pushing the cashier.
 {¶ 10} Based on the above evidence, the jury found Eskridge guilty of both counts. The trial court sentenced him to two years for the robbery and six months for the theft, to run concurrently with each other.
 {¶ 11} Eskridge in his first assigned error argues his robbery conviction was not supported by sufficient evidence and was against the manifest weight of the evidence, because there was no evidence that he used force in stealing the money from the cash register.
 {¶ 12} In State v. Jenks,[2] the Court set forth the following standard for our review of a sufficiency challenge:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 14} In reviewing a manifest weight of the evidence argument, our duty is to review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[3]
 {¶ 15} We recognize that the weight of the evidence and the credibility of witnesses are primarily issues for the jury, because the jury is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility.[4]
 {¶ 16} Pursuant to R.C. 2911.02(A)(3), robbery is defined as:
 {¶ 17} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 18} * * *
 {¶ 19} "(3) Use or threaten the immediate use of force against another."
 {¶ 20} In the present case, Eskridge admitted at trial that he committed a theft offense and he apparently does not challenge that element of the robbery offense on appeal. Rather, Eskridge contends that the evidence failed to prove the element of force.
 {¶ 21} Pursuant to R.C. 2901.01(A), "force" is defined as: "any violence, compulsion, or constraint physically exerted by any means upon a person or thing." The Committee Comment to R.C. 2911.02 states in relevant part that "* * * As in the section on aggravated-robbery, this section provides that the difference between theft and robbery is an element of actual or potential harm to persons."[5]
 {¶ 22} At trial the cashier testified that Eskridge pushed her a half-inch back. We do not find that this slight push "posed actual or potential harm" to the cashier. In fact, the still photographs from the videotape, which shows the time the photographs were taken, indicate that if Eskridge did in fact push the cashier, which is hard to determine from the photographs because the cashier's back faces the camera, Eskridge achieved both the push and the theft within two seconds with Eskridge only using his right arm.
 {¶ 23} Although the state cites to cases in which a push or forceful taking of a purse constituted the force necessary for robbery, those cases are distinguishable because the victims in those cases either also fell down or almost fell, which would subject them to the danger of being injured.[6]
 {¶ 24} The state does cite to the Sixth District Court of Appeals' opinion, In re Nathan Earl S.,[7] for the proposition that slight force without the danger of causing the victim to fall, constitutes sufficient force. We believe Nathan Earl is an anomaly because it fails to follow the precedent that has been established in Ohio regarding the amount of force that is required to constitute robbery.
 {¶ 25} Further, the Ohio Supreme Court in State v. Davis[8] held that the force used in a robbery must create sufficient "fear" as to cause the victim to part with the property:
 {¶ 26} "The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed."[9]
 {¶ 27} In the instant case, there is no indication that the victim was fearful. She did not testify that she was afraid. Instead, the evidence shows the victim attempted to protect the money by pushing the drawer shut. This is similar to the victim in State v. Furlow,[10]
maintaining a firm grasp on his wallet to keep it from being taken.
 {¶ 28} We conclude that the legislature did not intend such minimal force, which did not pose a danger of physically harming the victim and caused no fear in the victim, could constitute the force necessary for a robbery offense.[11] Instead, the evidence supports a conviction for theft pursuant to R.C. 2913.02.[12]
 {¶ 29} Based on the state of the evidence, we conclude Eskridge's conviction was not supported by sufficient evidence. Accordingly, Eskridge's first assigned error is sustained.
 {¶ 30} The remaining assigned error in which Eskridge contends the trial court erred in instructing the jury on "force" is moot. We therefore need not addressed it.[13]
 {¶ 31} Judgment is reversed and remanded for proceedings consistent with this opinion.
This cause is reversed and remanded.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Timothy E. McMonagle and James D. Sweeney, JJ., concur.
James D. Sweeney, retired, of the eighth District Court of Appeals Sitting By Assignment.
[1] The prosecutor, defense counsel and the court reporter have indicated to this court that they cannot locate the videotape. At oral argument, however, both defense counsel and the prosecutor conceded that the videotape consisted of a series of separate, still photographs taken by the camera and was not a continuous stream of film. Therefore, the photographs copied from the videotape are sufficient for our review of the matter. Defendant is therefore not prejudiced by the missing videotape.
[2] (1991), 61 Ohio St.3d 259, paragraph two of syllabus, citingJackson v. Virginia (1979), 443 U.S. 307.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175, citing Tubbs v.Florida (1982), 457 U.S. 31, 38. See, also, State v. Thompkins (1997),78 Ohio St.3d 380.
[4] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[5] See, also, State v. Furlow (1992), 80 Ohio App.3d 146, 148; Statev. Carter (1985), 29 Ohio App.3d 148, 149; State v. Brown (Nov. 27, 2002), Cuyahoga App. No. 81180; State v. Sumlin (June 15, 2000), Cuyahoga App. No. 76261; State v. Brown (Sept. 28, 1995), Cuyahoga App. No. 67771.
[6] State v. Wolford (Dec. 28, 2000), 10th Dist. No. 00AP-378 (court found sufficient evidence of force based on fact victim was dragged by defendant as victim held onto purse and victim subsequently fell down, injuring her knee); State v. McCullough (Feb. 22, 1994), 10th Dist. No. CA 9235 (although victim did not fall down, she stumbled and lost her balance, which constituted sufficient evidence of force); State v. Wynn
(June 11, 1998), 10th Dist. No. 97APA09-1203 (victim of purse snatching was "jolted" to the "point she would have fallen if she was not just holding the purse," was sufficient evidence of force.) See, also, Statev. Sumlin, supra, (this court held that sufficient force shown by extended struggle with defendant as he fled the scene); State v. Zoya
(Dec. 16, 1993), Cuyahoga App. No. 64322 (defendant's thrashing and swinging arms, which struck security guard in chest and use of weight to try to break fee of security guard all posed potential of harm to guard and therefore constituted sufficient proof of "force"); State v. Jones
(Mar. 13, 1990), 10th Dist. No. 89AP-424 (the fact defendant grabbed purse with such force that if the strap had been all the way over the victim's hand, she would have been pulled over, constituted sufficient force.)
[7] (Jan. 26, 1996), 6th Dist. No. S-95-015.
[8] (1983), 6 Ohio St.3d 91.
[9] Id. at paragraph one of the syllabus.
[10] State v. Furlow, 80 Ohio App.3d 146.
[11] State v. Furlow, 80 Ohio App.3d at 149 (no evidence that defendant's snatching of wallet out of victim's firmer than usual grasp "occasioned either actual or potential harm" to victim).
[12] State v. Furlow, 80 Ohio App.3d at 148 ("Requiring that the force necessary to elevate a theft to a robbery involve actual or potential harm provides a meaningful distinction between the two offenses.")
[13] App.R. 12(A)(1).